IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MELISSA ANNE PRATT                                                                               PLAINTIFF

v.                              Civil No. 2:14-CV-2234-MEF

CAROLYN COLVIN, Commissioner
Social Security Administration                                                                 DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Melissa Pratt, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff filed her application for DIB on May 14, 2012, alleging an onset date of August 15, 2010, due to a back injury, migraines, and a thyroid disorder. Tr. 103-109, 142, 152-153, 156. The Commissioner denied Plaintiff's applications initially and on reconsideration. Tr. 52-57, 61-63. An Administrative Law Judge ("ALJ") held an administrative hearing on May 8, 2013. Tr. 33-51. Plaintiff was present and represented by counsel.

At the time of the hearing, the Plaintiff was 48 years old and possessed a high school education with one year of college credit. Tr. 103, 143. Her past relevant work ("PRW") experience was as a press operator in a factory and an assembler. Tr. 131-132, 143-144.

On September 12, 2013, the ALJ entered a partially favorable decision. Tr. 14-28. He concluded that the Plaintiff was under a disability from August 15, 2010, through April 7, 2013, due to a disorder of her spine. Tr. 17, 21. However, medical improvement occurred on April 8, 2013, positively affecting her residual functional capacity ("RFC"). Because the ALJ found no evidence that the Plaintiff developed any new impairments after April 8, 2013, he determined that her disability ceased. Tr. 21. Beginning April 8, 2013, the ALJ pronounced the Plaintiff capable of performing sedentary work involving only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling and no climbing of ladders, ropes, or scaffolds. With the assistance of a vocational expert, he concluded she could perform work that exists in significant numbers in the national economy. Tr. 27.

The Appeals Council denied the Plaintiff's request for review on October 3, 2014. Tr. 1-6. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. ECF No. 5. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 10, 11.

**II.    Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,*

761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work

experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520(a)(4)(v).

**III.     Discussion:**

The ALJ awarded the Plaintiff a period of disability extending from August 15, 2010, through April 7, 2013, due to a disorder of the spine. As of April 8, 2013, he determined she had experienced medical improvement and found no evidence of any new impairments. The ALJ then found her capable of performing sedentary work involving occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling and no climbing of ladders, ropes, or scaffolds. After reviewing the evidence, we disagree.

"An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); 20 C.F.R. § 404.1521(a)). "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported

by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Because the ALJ found the Plaintiff disabled from her alleged onset date until April 2013, we will not recite all of the medical evidence of record. Instead, we will focus on the evidence relevant to the Plaintiff's appeal. The Plaintiff's back impairment appears to stem from a work injury she sustained in April 2010. Conservative measures to include narcotic pain medications, epidural steroid injections, and therapy were ultimately unsuccessful. An MRI of the her lumbar spine conducted in early February 2013 revealed bulging disks from the L1-L5 levels; foraminal stenosis at the L2-3, L3-4 and L4-5 levels; facet hypertrophy at the L3-4 and L5-S1 levels; an annular tear and lateral recess stenosis at the L4-5 level; and, facet degeneration and hypertrophy at the L3-4, L4-5, and L5-S1 levels. Tr. 353-356. On February 11, 2013, Dr. Jeffrey Nees performed a lumbar laminotomy and faraminotomy including partial facetectomy with decompression of the nerve roots and disk decompression of the right at the L4-5 level and thermal ablation of the paravertebral facet joint nerve on the left at the L4-5 level. Tr. 342-350. While this does appear to have resolved the symptoms associated with the annular tear and abnormalities involving the L4-5 vertebra, the Plaintiff continued to experience numbness and pain related to the bulging disks, foraminal stenosis, and facet hypertrophy at the remaining levels. The surgery did nothing to correct these defects, and doctors continued to prescribe Hydrocodone and Nucynta to treat her pain.

On April 2, 2013, Plaintiff complained of continued numbness in her buttocks and legs, reporting she could only sit for up to three hours at a time. Tr. 331-332. Dr. Wanda McMichael, Plaintiff's treating doctor, noted swelling and tenderness along the lumbar and paraspinal muscles.

She opined that the Plaintiff could not lift, bend, or twist due to her remaining disk issues. Further, Dr. McMichael found her unable to work, indefinitely, due to lumbar disk disease. Tr. 175.

On May 2, 2013, the Plaintiff also complained of carpal tunnel syndrome with pain and weakness in her right hand. Tr. 328-330. She reported difficulty lifting and using her right hand to assist with personal hygiene and grooming. On examination, Dr. McMichael noted numbness from the forearm to the elbow and no dorsiflexion. Further, both Tinel's and Phalen's signs[1] were both positive and accompanied by poor grip. Dr. McMichael increased her dosage of Nucynta and prescribed Nortriptyline and carpal tunnel splints.

On May 3, 2013, Dr. McMicheal completed a medical source statement indicating that the Plaintiff continued to experience back pain and leg radiculopathy, in spite of surgical intervention. She also suffered from severe carpal tunnel syndrome in her right wrist/hand. According to the doctor, the Plaintiff could occasionally lift less than ten pounds, stand/walk two hours a day, and sit less than six hours a day. Tr. 319-321. Further, she indicated the Plaintiff must periodically alternate between sitting and standing and would be limited in her ability to use her upper and lower extremities to push and pull, reach, handle, finger, and feel. She also determined that the Plaintiff could occasionally kneel, but should never climb, balance, crouch, or crawl. Additionally, Dr. McMichael endorsed restrictions limiting her exposure to vibration, humidity/wetness, and hazards (machinery and heights).

On May 6, 2013, nerve conduction studies revealed carpal tunnel syndrome on the right. Tr. 327, 329. Although the Plaintiff reported some improvement on May 15, 2013, she continued

---

[1] Tinel's and Phalen's signs are tests used to diagnose carpal tunnel syndrome. WebMD, LLC, *Carpal Tunnel Syndrome Health Center*, http://www.webmd.com/pain-management/carpal-tunnel/physical-exam-for-carpal-tunnel-syndrome (last accessed October 15, 2015).

to have numbness in her forearm and remained unable to dorsiflex the hand. Tr. 325. Dr. McMichael referred her to a neurologist and prescribed hand exercises and physical therapy.

On September 24, 2013, Dr. McMichael completed a second medical source statement, essentially identical in restriction to the May 2013 assessment. Tr. 372-374. Dr. McMichael indicated that the Plaintiff experienced continued pain and weakness in her back and leg, especially when on her feet for long periods. Further, her carpal tunnel syndrome was slowly improving with physical therapy and muscle stimulation. However, she continued to have deficits that would affect her ability to reach, handle, finger, and feel.

The undersigned finds that remand is necessary for several reasons. First, the record is devoid of substantial evidence to support the ALJ's determination that the Plaintiff's only severe impairment is her spinal disorder. The record makes clear that her carpal tunnel syndrome is severe and results in significant work-related limitations. *See Page*, 484 F.3d at 1043 ("If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two.").

Second, the ALJ's RFC determination does not account for all of the limitations associated with the Plaintiff's severe impairments. The evidence calls into question the Plaintiff's ability to sit as is required to perform sedentary work and use her right hand for handling, grasping, and fingering. Carpal tunnel syndrome also affects her ability to perform activities requiring frequent rapid, repetitive flexion/extension of the wrist such as typing, cutting, sewing, playing a musical instrument, overuse of small hand tools, and use of vibrating tools. *See* PHYSICIAN'S DESK REFERENCE, *Carpal Tunnel Syndrome*, http://www.pdrhealth.com/diseases/carpal-tunnel-syndrome (last accessed October 15, 2015).

Further, the ALJ found the Plaintiff disabled from her alleged onset date until April 7, 2013, because she was only able to perform sedentary work involving occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, crawling; no climbing of ladders, ropes, or scaffolds; and, would be off-task approximately 1/3 of the workday. Tr. 19. We note that the only difference between the RFC prior to April 7, 2013, and after is the limitation that the Plaintiff would be off-task 1/3 of the workday. This, the ALJ found to be the result of her intractable pain that did not respond to numerous epidural injections, physical therapy, and the use of strong pain medication. In reviewing the evidence, we note the Plaintiff continued to experience numbness and pain in her buttocks and legs, even after surgical intervention. It was certainly severe enough to warrant prescriptions for strong pain medications to include Hydrocodone and Nucynta. Accordingly, we cannot say that substantial evidence supports the ALJ's determination that the Plaintiff's pain would no longer be distracting.

The ALJ also failed to explain why he disregarded Dr. McMichael's up-to-date treating source statements in favor of the RFC determinations of two non-examining physicians. *See Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) (whether granting a treating physician's opinion substantial or little weight, the commissioner must always give good reasons for the weight assigned). The non-examining physicians completed these assessments prior to the Plaintiff's surgery and her diagnosis of carpal tunnel syndrome. As such, they are not entitled to significant weight.

On remand, the ALJ is ordered to reconsider the Plaintiff's severe impairments and reassess her RFC in light of those impairments. In so doing, the ALJ must also explain the weight given to Dr. McMichael's treating source statements.

**IV.     Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 15th day of October, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE